## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| **LAURA DOMIGAN,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Civil Action File No.** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **B & R INDUSTRIAL AUTOMATION** | **:** | **Jury Trial Demand** |
| **CORPORATION; B&R INDUSTRIAL** | **:** | |
| **AUTOMATION PARTNERS, INC.,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| _____ | **:** | |

## COMPLAINT

**COMES NOW** Plaintiff, Laura Domigan ("Plaintiff"), by and through counsel undersigned, and hereby submits her Complaint against Defendants, B & R Industrial Automation Corporation ("B&R Corporation"); and, B&R Industrial Automation Partners, Inc. ("B&R Inc."), (B&R Corporation and B&R Inc. are collectively referred to herein as ("Defendants" or the "Company"). Plaintiff shows the Court, as follows:

-1-

## Cause of Action

**1.**

This cause of action arises under the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), seeking remedy for sex discrimination, sexual harassment, hostile work environment, and retaliation, all of which occurred during Plaintiff's employment with Defendants.

## Parties, Jurisdiction and Venue

**2.**

At all times relevant to this action, Plaintiff was a resident of the State of Georgia and of the Northern District of Georgia.

**3.**

Upon information and belief, B&R Corporation is a foreign profit corporation, with its principal office located at 305 Gregson Drive, Cary, North Carolina 27511.   This Defendant may be served via its registered agent, C T Corporation System, 289 South Culver Street, Lawrenceville, Georgia 30046.

**4.**

Upon information and belief, B&R Inc. is a domestic profit corporation, which is affiliated with, or is a subsidiary of, B&R Corporation, with its principal

-3-

office located at 1325 Northmeadow Parkway, Suite 130, Roswell, Georgia 30076. This Defendant may be served via its registered agent, Gregory Edwards, located at the same address.

**5.**

The jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1337.

**6.**

All jurisdictional prerequisites to the institution of Plaintiff's suit under Title VII have been fulfilled. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the discriminatory acts, and, Plaintiff now files this Complaint within 90 days of receipt of the EEOC Dismissal and Notice of Rights. Plaintiff's March 20, 2024 Charge of Discrimination is attached hereto as **Exhibit A**.

**7.**

Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district as the Defendants conduct business within the Northern District of Georgia.

**Factual Allegations**

**8.**

Plaintiff became employed by the Company on January 23, 2021. Plaintiff's title was Order Management Specialist, and she reported to the Order Operations Manager, Tucker.

**9.**

Tucker's son, Alex Keown ("Alex"), was also employed at the Company as a warehouse worker.

**10.**

Sometime in October of 2023, Alex added Plaintiff as a friend on Snapchat. Because Tucker had previously asked Plaintiff to follow Alex on social media to support his new clothing brand, she accepted Alex's friend request, and also followed Alex's clothing brand, on Instagram.

**11.**

On October 21, 2023, Plaintiff opened Snapchat and saw a picture depicting Alex, posing in a bathroom mirror. He was visible from his face to his knees, wearing briefs (men's underwear) with a fully-erect penis.

-5-

**12.**

Plaintiff was shocked and confused as to why Alex would send something like that to her, as the most interaction the two had ever had, was to say "Hi" or "Bye" as they occasionally passed one another in the workplace.

**13.**

Plaintiff responded, via Snapchat, with "Not interested.  Put some clothes on. Don't you have to be at a wedding soon?"  Alex immediately sent Plaintiff a picture of his bare chest in the shower.  Plaintiff did not respond.

**14.**

Plaintiff was bewildered as to why Alex would do these things, especially since her boss, Tucker, is Alex's mother!

**15.**

Plaintiff confided in a coworker, Laura, who told Plaintiff that Alex had done the same thing to her daughter, who did not report Alex, for fear of causing problems with her parents' employment at the Company.

**16.**

On October 28, 2023, at 9:00 a.m., Alex sent Plaintiff another picture of himself, in his briefs, with a full erection, via Snapchat.  The text under his picture

said "It's almost Halloween and I ain't got a boo."  Plaintiff responded with "Roses are red.  Violets are blue.  How many girls did you send this to?"

**17.**

Thereafter, Alex deleted his Snapchat account, and Plaintiff thought that would be the end of it all.

**18.**

However, on January 21, 2024, Alex sent Plaintiff a comment (from his business/clothing brand account) to Plaintiff's Snapchat account, where Plaintiff had posted several pictures of a winter vacation she had taken with her grandmother, including one of Plaintiff holding a drink in a very large goblet.

**19.**

Alex's comment was "You thirsty?"  Plaintiff took his question literally, and responded with "Yep!  Drank the whole thing in one sitting lol."

**20.**

Subsequently, several of Plaintiff's friends pointed out that Alex's comment was actually creepy, as there was a sexual innuendo in Alex's question which, in today's slang, really asks if one is hungry for male attention.  Plaintiff then took a screenshot of Alex's comment and blocked his profile from her account.

**21.**

Then, on January 23, 2024, Alex was back on Snapchat and again sent Plaintiff a series of pictures of himself, nude, with an erect penis.

**22.**

Because Snapchat will notify a sender if their picture or comment is screenshot, Plaintiff's grandmother used her phone to take pictures of Plaintiff's phone, with Alex's pictures displayed. Plaintiff then blocked every one of Alex's accounts across all her social media platforms.

**23.**

Thereafter, Alex was loitering around Plaintiff's workspace. Plaintiff asked Alex to move away from her desk, but he ignored her request. Some of Plaintiff's coworkers noticed Alex's loitering/odd behavior, as well.

**24.**

On January 30, 2024, Plaintiff reported all of these circumstances to the Company's Human Resource ("HR") representative, Daisy.

**25.**

Plaintiff explained everything and showed Daisy the pictures Alex had sent Plaintiff. Daisy took notes as Plaintiff spoke, asked Plaintiff to provide her with a

written statement, and told Plaintiff that the Company attorneys would review her complaint.

**26.**

Daisy stated that, after Plaintiff left the office that day, Alex would be suspended from  work, with pay, pending the outcome of the Company's investigation.

**27.**

Plaintiff did not hear anything from Daisy until February 5, 2024, when Plaintiff sent Daisy an email requesting a status regarding her complaint/Defendants' investigation.  Daisy told Plaintiff that she [Daisy] would be meeting with the Integrity Committee, a group of senior HR personnel and legal managers, on February 8, 2024.

**28.**

On February 9, 2024, Daisy asked Plaintiff to come to her office, where she told Plaintiff that Alex was being terminated.  Daisy then asked if Laura, Plaintiff's coworker, knew that Plaintiff had reported Alex.  Plaintiff told Daisy that she had told both Laura, and another coworker, Joe, who had noticed Alex hanging around Plaintiff's workspace/desk.

**29.**

Daisy stated that the investigation was thwarted because Plaintiff had "broken confidentiality" by telling Laura and Joe, although, Plaintiff had told Laura and Joe about Alex before she reported his conduct to HR.

**30.**

Plaintiff returned to her workspace and was promptly confronted by Tucker, who said "We're going to have this out right now. You are ruining my and my son's lives!" Plaintiff told Tucker that she would not speak with her without HR being present.

**31.**

As Plaintiff and Tucker walked to Daisy's office, Tucker told Plaintiff that she was totally unprofessional, that Plaintiff should have talked with her first, that Plaintiff obviously cared nothing about her or her family, and that, Plaintiff might as well gather her belongings and "go home and not come back!"

**32.**

When they reached Daisy's office, Tucker simply exploded - - she was furious. Daisy asked Tucker how she knew about the situation. Tucker said that Alex told her, and that, he told her it was all a mistake. Tucker stated that "Alex is

in a fragile state of mind" and that Plaintiff had "put Alex at risk" by not reporting him sooner.

**33.**

Tucker then turned to Plaintiff and said "You're choosing to ruin his life" and "You're ruining my life and my reputation."  Tucker then admitted that Alex had actually sent her nude pictures of himself, as well.

**34.**

Suddenly, Daisy told Tucker that she knew that Tucker was "the beacon of professionalism." She turned to Plaintiff and said "I need to track down each person you told about this and tell them to keep their mouth shut!"

**35.**

Suddenly, Plaintiff was being treated as if she was somehow at fault in the horrible situation created by Alex and his mother.  Daisy told Plaintiff to go home.

**36.**

Plaintiff returned to work the following Monday and continued to perform her duties to the best of her ability, as always.  However, she felt extremely uncomfortable. When others were near, Tucker was well-behaved and professional. However, when only Tucker and Plaintiff were in earshot, Tucker would tell Plaintiff that she was not manageable, that she needed to find another job, and that,

HR would help her do it.  Consequently, Plaintiff then felt as if HR was against her, as well as Tucker.

**37.**

Further, Plaintiff tried not to speak with anyone, as she was distrustful of others, and afraid that speaking to those coworkers, whom she knew supported her, might cause negative repercussions for them.

### <u>COUNT I</u>
### (Sex Discrimination, Retaliation and Hostile Work Environment - Title VII)

**38.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs 8 through 37.

**39.**

Plaintiff was sexually harassed by Defendants' male employee, the son of Defendants' Order Operations Manager and Plaintiff's direct supervisor, Tucker. This is sex discrimination.

**40.**

When Plaintiff complained about the sexual harassment, she was ridiculed, demeaned and chastised by Tucker and Defendants' HR representative.  This is retaliation.

**41.**

Because Plaintiff complained to HR and exposed the sexual harassment of Tucker's son, Tucker, with apparent consent of HR and/or the powers that be within the Company, created and/or allowed to exist, a threatening, extremely unpleasant, hostile work environment for Plaintiff. This also, is retaliation.

**42.**

Defendants discriminated and retaliated against Plaintiff, and created a hostile work environment on the basis of sex and retaliation, all in violation of Title VII.

**43.**

At the time of the discriminatory and retaliatory acts alleged, Defendants knew or should have known that the means utilized to discriminate and retaliate against Plaintiff were discriminatory and forbidden by law.

**44.**

Defendants performed the above described discriminatory and retaliatory actions willfully, wantonly, intentionally, and in reckless and callous disregard of Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendants, as follows:

(a)    That Defendants be ordered to formulate, distribute and implement a written policy which does not discriminate in any manner which is a violation of Title VII;

(b)    That Plaintiff recover compensatory damages for Defendants' willful violations of Title VII;

(c)    The Plaintiff be awarded punitive damages to punish the Defendants for their unlawful actions and violations of Title VII;

(d)    That Plaintiff recover costs and expenses of litigation, including an award of reasonable attorney's fees;

(e)    That Plaintiff recover prejudgment interest;

(f)    That the Court issue a declaratory judgment that the practices complained of are unlawful and void; and

(g)    For such other and further relief as the Court deems just and proper.

### Jury Demand

Plaintiff hereby demands a trial by jury of all issues in this action.

Dated this 21st day of August 2024.

**PANKEY & HORLOCK, LLC**

By:  */s/ Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
*Attorneys for Plaintiff*

-13-

-14-

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338
Telephone:   770-670-6250
Facsimile:    770-670-6249
LPankey@PankeyHorlock.com

## <u>CERTIFICATION OF FONT SIZE</u>

Pursuant to Local rule 5.1C of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, of Pankey & Horlock, LLC, attorney for Plaintiff, Laura Domigan, hereby certify that the foregoing **Complaint** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 21st day of August 2024.

**PANKEY & HORLOCK, LLC**

By:  _/s/ Larry A. Pankey_____
       Larry A. Pankey
       Georgia Bar No. 560725
       ***Attorneys for Plaintiff***

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **LAURA DOMIGAN,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action File No.** |
| | : | |
| **v.** | : | |
| | : | |
| **B & R INDUSTRIAL AUTOMATION** | : | |
| **CORPORATION; B&R INDUSTRIAL** | : | |
| **AUTOMATION  PARTNERS, INC.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing

**Complaint** with the Clerk of Court using the CM/ECF system.

Dated this 21st day of August 2024.

> **PANKEY & HORLOCK, LLC**
>
> By: /s/ *Larry A. Pankey*
>
> Larry A. Pankey
> Georgia Bar No. 560725
> ***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:  770-670-6250
Facsimile:   770-670-6249
LPankey@PankeyHorlock.com

-16-